**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| DAVIYA KINNAMON, Individually and for Others Similarly Situated | **Case No. ________________** |
| v. | Jury Trial Demanded |
| HEARTLAND AMBULANCE SERVICE LLC | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Daviya Kinnamon (Kinnamon) brings this class and collective action to recover unpaid wages and other damages from Heartland Ambulance Service LLC (Heartland).

2. Heartland employed Kinnamon as one of its Hourly Employees (defined below).

3. Kinnamon and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. But Heartland does not pay Kinnamon and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek.

5. Instead, Heartland pays Kinnamon and the other Hourly Employees non-discretionary bonuses, including sign-on bonuses and training bonuses, it excludes from these employees' regular rates of pay for overtime purposes (Heartland's "bonus pay scheme").

6. Heartland's bonus pay scheme violates the Fair Labor Standards Act (FLSA) and Indiana Minimum Wage Law (IMWL) by failing to compensate Kinnamon and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

7. Heartland's bonus pay scheme violates the Indiana Wage Payment Law (IWPL) by failing to compensate Kinnamon and the other Hourly Employees all their earned wages on their regular paydays at least semimonthly.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. This Court has general personal jurisdiction over Heartland because it is a Indiana limited liability company and maintains its principal office in Muncie, Indiana.

11. Venue is proper because Heartland maintains its principal place of business in Muncie, Indiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

12. Heartland employed Kinnamon as an emergency medical technician (EMT) from approximately September 2024 until November 2025.

13. Throughout her employment, Heartland paid Kinnamon under its bonus pay scheme.

14. Kinnamon's written consent is attached as **Exhibit 1**.

15. Kinnamon brings this class and collective action on behalf of herself and similarly situated Heartland employees.

16. The putative FLSA collective is defined as:

> **All hourly employees who Heartland paid under its bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

17. The putative Indiana class is defined as:

> **All hourly employees in Indiana who Heartland paid under its bonus pay scheme during the last three years through final resolution of this action (the "Indiana Class Members").**

18. The FLSA Collective Members and Indiana Class Members are collectively referred to as the "Hourly Employees."

19. Heartland is an Indiana limited liability company with its principal place of business in Muncie, Indiana.

20. Heartland may be served with process through its registered agent: **CCHA Registered Agent LLC, 2 N. 9th St., Noblesville, Indiana 46060**.

**FLSA COVERAGE**

21. At all relevant times, Heartland was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Heartland was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Heartland was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Heartland had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, Kinnamon and the other Hourly Employees were Heartland's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, Kinnamon and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

27. Heartland touts that it specializes in "medical transportation services and offers 911 emergency services, non-emergent medical transportation, fixed wing-air ambulance services, and more to Muncie, Anderson, Portland, New Castle, Kokomo, Marion, Carmel, Fishers, and surrounding IN communities."[1]

28. To meet its business objectives, Heartland employs workers, including Kinnamon and the other Hourly Employees, to care for and transport patients.

29. For example, Heartland employed Kinnamon as an EMT in and around Muncie, Indiana area from approximately September 2024 until November 2025.

30. Kinnamon's primary job duties included responding to 911 emergency calls, evaluating patients, providing emergency medical care to patients, transporting patients to appropriate medical facilities, and performing field training.

31. Throughout her employment, Kinnamon regularly worked more than 40 hours in a workweek.

32. Indeed, Kinnamon typically worked approximately four to seven 12 or 24-hour shifts "on the clock" (84 to 168 hours in a workweek).

33. Heartland paid Kinnamon approximately $18 an hour.

34. Likewise, the other Hourly Employees typically work similar schedules of 84+ hours a workweek "on the clock."

35. And Kinnamon and the other Hourly Employees are required to report their "on the clock" hours through Heartland's timekeeping system.

---

[1] https://heartlandambulance.com/medical-transportation-service-muncie/ (last visited January 17, 2026).

36. But Heartland does not pay Kinnamon and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

37. Instead, Heartland pays Kinnamon and the other Hourly Employees under its bonus pay scheme.

38. Specifically, Heartland agrees to pay and subsequently pays Kinnamon and the other Hourly Employees non-discretionary bonuses, including sign-on bonuses and training bonuses, based on criteria Heartland sets.

39. But Heartland excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

40. For example, during the pay period ending September 28, 2024, Heartland paid Kinnamon a sign on bonus labeled simply, "Bonus":

Earnings Statement — KINNAMON, DAVIYA

Pay Date: 10/04/2024
Period Start: 09/15/2024
Period End: 09/28/2024

Company: 0UV86 - HEARTLAND AMBULANCE SERVICE LLC
408 W AIR PARK DR
MUNCIE IN 47303 (765) 637-6330

Emp #: A1KB
Dept: 200 - EMT - Basic
Pay Basis: Hourly

| Earnings | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| Regular | 18.00 | 80.00 | 1440.00 | 2745.00 |
| Overtime | 27.00 | 92.00 | 2484.00 | 3685.50 |
| Bonus | | | 1000.00 | 1000.00 |
| **Gross Pay** | | **172.00** | **4924.00** | **7430.50** |

41. But Heartland excluded this sign-on bonus from her regular rate of pay for overtime purposes.

42. Thus, under its bonus pay scheme, Heartland does not pay Kinnamon and the other Hourly Employees earned wages, including overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## Class and Collective Action Allegations

43. Kinnamon brings her claims as a class and collective action on behalf of herself and the other Hourly Employees.

44. Like Kinnamon, the other Hourly Employees are victimized by Heartland's bonus pay scheme.

45. Other Hourly Employees worked with Kinnamon and indicated they were paid in the same or similar manner under Heartland's bonus pay scheme.

46. Based on her experience with Heartland, Kinnamon is aware Heartland's bonus pay scheme was imposed on other Hourly Employees.

47. The Hourly Employees are similarly situated in the most relevant respects.

48. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to timely payment of all earned wages, including overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

49. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

50. Rather, Heartland's bonus pay scheme renders Kinnamon, and the other Hourly Employees similarly situated for the purpose of determining their right to timely payment of earned wages, including overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek.

51. Heartland's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

52. Heartland's records also show it paid Kinnamon and the other Hourly Employees non-discretionary bonuses that it excluded from their regular rates of pay for overtime purposes.

53. The back wages owed to Kinnamon and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

54. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Heartland's records, and there is no detraction from the common nucleus of liability facts.

55. Therefore, the issue of damages does not preclude class or collective treatment.

56. Kinnamon's experiences are typical of the experiences of the other Hourly Employees.

57. Kinnamon has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

58. Like each Hourly Employee, Kinnamon has an interest in obtaining the unpaid wages owed under federal and Indiana law.

59. Kinnamon and her counsel will fairly and adequately protect the interests of the Hourly Employees.

60. Kinnamon retained counsel with significant experience handling complex class and collective action litigation.

61. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Heartland will reap the unjust benefits of violating the FLSA, IMWL, and/or IWPL.

62. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

63. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Heartland.

64. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

65. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

66. Among the common questions of law and fact are:

a. Whether Heartland paid the Hourly Employees non-discretionary bonuses;

b. Whether Heartland failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c. Whether Heartland failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

d. Whether Heartland failed to timely pay all earned wages due and owing to the Hourly Employees;

e. Whether Heartland's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

f. Whether Heartland's violations were willful.

67. As part of its regular business practices, Heartland intentionally, willfully, and repeatedly violated the FLSA with respect to Kinnamon and the other Hourly Employees.

68. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

69. The Hourly Employees are known to Heartland, are readily identifiable, and can be located through Heartland's business and personnel records.

## Heartland's Violations Were Willful

70. Heartland knew it employed Kinnamon and the other Hourly Employees.

71. Heartland knew it was subject to the FLSA's overtime provisions.

72. Heartland knew it was subject to the IWPL's earned wages provisions.

73. Heartland knew the FLSA required it to pay non-exempt employees, including Kinnamon and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

74. Heartland knew the IWPL required it to pay non-exempt employees, including the Indiana Class Members, all earned wages on their designated paydays at least semimonthly.

75. Heartland knew Kinnamon and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Heartland's timekeeping system.

76. Heartland knew Kinnamon and the other Hourly Employees were non-exempt employees entitled to overtime wages.

77. Heartland knew it paid Kinnamon and the other Hourly Employees non-discretionary bonuses.

78. Heartland knew it was required to include these non-discretionary bonuses in their regular rates of pay for overtime purposes during workweeks they were earned.

79. Heartland knew these non-discretionary bonuses were not included in Kinnamon's and the other Hourly Employees' regular rates of pay for overtime purposes.

80. And Heartland knew the FLSA and IWPL require it to timely pay Kinnamon and the other Hourly Employees all earned wages, including overtime at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

81. Heartland's failure to pay Kinnamon and the other Hourly Employees earned wages, including overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

82. Heartland knowingly, willfully, and/or in reckless disregard of the FLSA and IWPS carried out its unlawful bonus pay scheme that deprived Kinnamon and the other Hourly Employees of earned wages, including overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked after 40 in a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

83. Kinnamon brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

84. Heartland violated, and is violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

85. Heartland's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

86. Accordingly, Heartland owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

87. Because Heartland knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Heartland owes the FLSA Collective Members these wages for at least the past 3 years.

88. Heartland is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

89. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**VIOLATION OF THE INDIANA MINIMUM WAGE LAW**
**(INDIANA CLASS)**

90. Kinnamon brings her IMWL claim as a class action on behalf of herself and the other Indiana Class Members pursuant to FED. R. CIV. P. 23.

91. At all relevant times the Indiana Class Members were (and are) covered "employees" within the meaning of the IMWL. Ind. Code Ann. § 22-2-2-3.

92. At all relevant times Heartland was (and is) a covered "employer" within the meaning of the IMWL. *Id.*

93. The IMWL requires employers, like Heartland, to pay employees, including the Indiana Class Members, overtime wages at rates of at least 1.5 times the employees' regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek. Ind. Code Ann. § 22-2-2-4(f).

94. Heartland violated, and is violating, the IMWL by employing the Indiana Class Members in a covered enterprise for workweeks longer than 40 hours without paying these employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked after 40 in a workweek. Ind. Code Ann. § 22-2-2-4(f) and (g).

95. Heartland's unlawful conduct harmed the Indiana Class Members by depriving them of the wages they are owed.

96. Accordingly, the Indiana Class Members are entitled to the difference between the wages paid and the wages actually earned under the IMWL, plus an equal amount as liquidated damages, as well as attorney's fees and costs. Ind. Code Ann. § 22-2-2-9.

## COUNT III
## VIOLATION OF THE INDIANA WAGE PAYMENT LAW
## (INDIANA CLASS)

97. Kinnamon brings her IWPL claim as a class action on behalf of herself and the other Indiana Class Members pursuant to FED. R. CIV. P. 23.

98. At all relevant times the Indiana Class Members were (and are) covered "employees" within the meaning of the IWPL. Ind. Code Ann. § 22-2-5-1(a).

99. At all relevant times Heartland was (and is) a covered "employer" within the meaning of the IWPL. *Id.*

100. The IWPL requires employers, like Heartland, to pay employees, including the Indiana Class Members, "at least semimonthly … for all wages earned to a date not more than ten (10) business days prior to the date of payment." Ind. Code Ann. § 22-2-5-1(a) and (b).

101. Heartland violated, and is violating, the IWPL by employing the Indiana Class Members in a covered enterprise and failing to pay these employees all earned wages, including overtime wages at the required rates based on their true regular rates, at least semimonthly. *Id.*

102. Heartland's unlawful conduct harmed the Indiana Class Members by depriving them of earned wages they are owed, including overtime wages owed.

103. Accordingly, the Indiana Class Members are entitled to "the amount of unpaid wages." Ind. Code Ann. § 22-2-5-2.

104. Because Heartland "was not acting in good faith" it owes "liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee." *Id.*

## JURY DEMAND

105. Kinnamon demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Kinnamon, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action;

c. And Order appointing Kinnamon and her counsel to represent the interests of the other Indiana Class Members;

d. An Order finding Heartland liable to Kinnamon and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Heartland liable to Kinnamon and the other Hourly Employees for unpaid overtime wages owed under the IMWL and IWPL, plus liquidated damages in an amount equal to their unpaid wages;

f. A Judgment against Heartland awarding Kinnamon and the other Hourly Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA and Indiana law;

g. An Order awarding attorneys' fees, costs, and expenses;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: January 22, 2026

Respectfully submitted,

**WERMAN SALAS P.C.**

*/s/Douglas M. Werman*

Douglas M. Werman
dwerman@flsalaw.com
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice application forthcoming*

**ATTORNEYS FOR KINNAMON & THE HOURLY EMPLOYEES**